UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.             )<br>)<br>(2) JONATHAN FRAIMAN,       )<br>        Defendant.    ) | Criminal No. 12-10238-FDS |

### AMENDED ORDER OF FORFEITURE (MONEY JUDGMENT)

**SAYLOR, D.J.**

WHEREAS, on August 7, 2014, a federal grand jury sitting in the District of Massachusetts returned a two-count Indictment charging defendant Jonathan Fraiman (the "Defendant") with Conspiracy, in violation of 18 U.S.C. § 1349 (Count One), and Mail Fraud, in violation of 18 U.S.C. § 1341 (Count Two);

WHEREAS, the Indictment also contained a forfeiture allegation, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), which provided notice that the United States sought the forfeiture, upon conviction of the Defendant of one or more of the offenses alleged in Counts One and Two of the Indictment, of any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, including, but not limited to, the sum of at least $4,058,743, which represents the proceeds of the offenses;

WHEREAS, the Indictment further provided that, if any of the above-described forfeitable property, as a result of any act or omission by the Defendant, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States is entitled to seek forfeiture of all other property of the

Defendant, up to the value of such assets, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p);

WHEREAS, on December 14, 2015, after a thirteen-day jury trial, a jury found the Defendant guilty on Counts One and Two of the Indictment;

WHEREAS, the evidence at trial showed that the Defendant entered into a conspiracy to defraud investors though false and misleading misrepresentations regarding Envit Capital, LLC ("Envit") from nearly the moment that he started to work at Envit, when the only employees were he, Ed Laborio ("Laborio"), and one other individual, Daniel Kenney ("Kenney"). All subsequent hiring was done after the Defendant was already working at Envit, and virtually all of the subsequently hired employees were utilizing essentially the same sales pitch to potential Envit investors on the basis of false information as the Defendant was (though, unlike the Defendant, there is no evidence establishing that those employees knew that the information was false). The Defendant and the more junior employees used the same scripts, the same pitch materials—both of which were provided by the Defendant's coconspirator, Laborio—and operated out of the same office space. While the Defendant was a more senior figure who had an individual office for most of his time there—befitting his status as Laborio's right-hand man—he was nevertheless in a position to hear what other employees were pitching and how they were pitching it. And, consistent with the jury's verdict, he also was in a position to know that the information being pitched—whether it was guaranteed dividends, fake revenues, or grossly overstated assets under management—was false. To the extent that the Defendant did not supervise or direct other Envit employees in their solicitation of monies, it was his coconspirator Laborio who did, with the Defendant's full knowledge of what Laborio's

directives were;

WHEREAS, for at least one employee, Matthew Lazar ("Lazar"), the Defendant acted as a direct supervisor, and claimed a bonus for the money that Lazar brought in.   Indeed, the Defendant reached out to Lazar's clients after Lazar left Envit to attempt to hold on to their business.   Similarly, it appears that the Defendant had contact with other "closers" clients—for example, victim Bradford Cleaves, who was solicited by Kenney, has informed the government that, in addition to Kenney, the Defendant and Laborio also made oral representations to him about the safety of his investment.   This demonstrates that the actions of other employees were heavily intertwined with those of the Defendant, and therefore fell well within the scope of the Defendant's conspiratorial conduct;

WHEREAS, further corroboration of that point is gleaned from considering the Defendant's Envit compensation, and as the Defendant testified before the SEC, his bonus/commission was 10% of monies he raised, and that would equal approximately $188,000 for the entire time he was there;

WHEREAS, as proven at trial, the Defendant received a total of $313,430 from Envit during that time span, and this means that his personal gain was tied not just to his own fraudulent solicitations, but to the fundraising success of others and the company as a whole;

WHEREAS, the activities of all other Envit employees in raising money for Envit were certainly within the scope of Laborio's and the Defendant's jointly undertaken activity, and taken in furtherance of the crime of raising money for Envit under false pretenses, and moreover, the money raised by those employees was reasonably foreseeable to the Defendant.   His knowledge of the "inner details of the scheme[]" afforded him a perfect vantage point from which to foresee

the money coming in to Envit. Indeed, the Defendant did not even need to "foresee" the behavior of the other employees and the attendant investor losses; he could hear the investor pitches occurring in the Envit office every day;

WHEREAS, there was testimony at trial (by Jonathan Genovese) and out-of-court statements by at least one other Envit employee that Envit salespeople were kept abreast of what funds the other employees were bringing in— the Defendant could see the amount of money others were procuring in real time on a board in the office, and as such, the other employees' activities, and the entirety of the resulting investor losses, were foreseeable to him;

WHEREAS, the amount the Defendant derived from his offenses is $3,800,465.29, which constitutes the amount raised from, and lost by, investors during the time that the Defendant was at Envit;[1]

WHEREAS, based on the evidence and testimony presented at trial and the jury's verdict as to the Defendant on December 14, 2015, the United States has established the requisite nexus between the proceeds the Defendant obtained and the offense for which the Defendant was found guilty, and the United States, therefore, is entitled to an Order of Forfeiture consisting of a personal money judgment against the Defendant, jointly and severally, in the amount of $3,800,465.29 in United States currency, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c);

WHEREAS, this amount represents the proceeds of the Defendant's offenses; and

---

[1] On April 4, 2016, the United States filed a Motion for Order of Forfeiture (Money Judgment), seeking a forfeiture money judgment in the amount of $3,800,466. *See* Docket No. 217. This Court granted the motion and issued the requested forfeiture money judgment, which was incorporated in the Criminal Judgment issued on April 26, 2016. *See* Docket Nos. 222-224. The restitution amount in this case will be revised to $3,800,465.29, and the forfeiture and the restitution amounts are the same. Accordingly, the United States seeks to amend its Motion for Forfeiture of Property (Money Judgment) to reflect the restitution amount.

WHEREAS, Rule 32.2(c)(1) of the Federal Rules of Criminal Procedure provides that "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment."

ACCORDINGLY, it is hereby ORDERED, ADJUDGED, and DECREED:

1. The Defendant shall forfeit to the United States the sum of $3,800,465.29 in United States currency, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c).

2. This Court shall retain jurisdiction in the case for the purpose of enforcing this Order.

3. The United States may, at any time, move pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure to amend this Order to include substitute property having a value not to exceed the amount set forth in Paragraph 1 to satisfy the money judgment in whole or in part.

4. The United States may, at any time, conduct pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m), as incorporated by 28 U.S.C. § 2461(c), any discovery to identify, locate or dispose of forfeitable property or substitute assets, including, but not limited to, depositions and requests for documents, electronically stored information, and tangible things.

5. Pursuant to Rule 32.2(b)(4), this Order shall be included in the amended criminal judgment entered by this Court against the Defendant.

/s/ F. Dennis Saylor
_____
F. DENNIS SAYLOR IV
United States District Judge

Dated: 12/14/2016